In the Matter of **ADVENTIST LIVING CENTERS, INCORPORATED,** Debtor–Appellee.

Appeal of **REINHART INSTITUTIONAL FOODS, INCORPORATED.**

No. 94–3120.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1995.

Decided April 11, 1995.

Jerome R. Kerkman (argued), Quarles & Brady, Milwaukee, WI, Gregory N. Kazarian, Pedersen & Houpt, Chicago, IL, for appellant Reinhart Institutional Foods, Inc.

Robert M. Fishman, Leonora L. Shaw, Ross & Hardies, Mark Leipold (argued), Oppenheimer, Wolff & Donnelly, Chicago, IL, for debtor-appellee Adventist Living Centers, Inc.

Before CUDAHY, ESCHBACH and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Adventist Living Centers (Adventist) is a bankrupt owner and manager of nursing home facilities. Reinhart International Foods, Inc. (Reinhart) was one of its food suppliers. Reinhart is now attempting to obtain an administrative priority based on a reclamation demand for food delivered in the 10 days before Adventist's bankruptcy filing. The bankruptcy court determined that Reinhart could not adequately prove the amount of food it was entitled to reclaim and that Adventist's failure to keep a promise to perform an inventory did not excuse Reinhart from this failure of proof. The district court affirmed the bankruptcy court and Reinhart now appeals. We affirm.

## I. Facts

Adventist filed for bankruptcy under Chapter 11 on November 14, 1990. On November 15, 1990, Reinhart made a written reclamation demand on Adventist for food delivered within the last 10 days. Four days later, on November 19, 1990, Reinhart's attorney Jerome Kerkman had a telephone conversation with Adventist's attorney Louis Levit. During that conversation, Kerkman told Levit that Reinhart did not actually want the food products returned, but instead wanted an administrative priority claim for the value of the food. Kerkman asserts that Levit told him in response that Adventist would take or had taken an inventory which would determine the amount to which Reinhart would be entitled. Levit does not remember making this promise, but does not deny having done so. Kerkman also attempted to document this conversation by sending a letter to Levit, but the letter was apparently sent to the wrong address and was never received. Kerkman did, however, provide a copy of the letter for the record.

No further relevant action was taken by either party until January 24, 1991. At that time, Adventist filed its Schedule of Assets and Liabilities with the bankruptcy court. Attached to the Schedule was an inventory which detailed the dollar value of food supplies at each of Adventist's facilities but did not break down that figure by individual food supplier. This inventory page was dated November 14, 1990, although it was attached to and filed with the Schedule in January 1991.

Reinhart continued to take no action on this claim until November of 1991, when it filed its proof of claim with the bankruptcy court, indicating that it was asserting a priority administrative claim of $38,915 for the food. It finally filed a motion to allow this

administrative priority expense on July 2, 1992.

The bankruptcy court denied the motion, concluding that Reinhart had not presented enough evidence regarding the amount of the reclamation, that Reinhart's assertion that Levit promised an inventory was not credible and that, even if it were, it was unreasonable for Reinhart to have relied on Adventist without taking any follow-up action. The district court also denied the motion for an administrative priority, although it accepted Reinhart's claim that Levit had promised an inventory. Instead, the district court based its denial of the motion on the belief that Reinhart should have acted sooner to ensure that an inventory was being taken, and that Reinhart's continued reliance on Levit after the Schedule was filed and it was obvious that no inventory had been taken was unreasonable. Reinhart now appeals, arguing that it justifiably relied on Levit's promise to make an inventory and that Adventist is now therefore estopped from arguing that Reinhart does not have sufficient evidence of the inventory in Adventist's possession to establish a claim for administrative priority. We disagree and affirm.

## II. Discussion

■ In order to establish a valid claim for reclamation (and thus a viable administrative priority claim based on a reclamation right), Reinhart must establish each element of the right to reclaim goods by a "fair preponderance of the evidence." *In re Video King of Illinois, Inc.,* 100 B.R. 1008, 1013 (Bankr.N.D.Ill.1989); *In re Rawson Food Service, Inc.,* 846 F.2d 1343, 1349 (11th Cir. 1988). These rather stringent requirements are:

1. That the seller sold goods on credit to the debtor in the ordinary course of business of both;

2. That the seller delivered the goods to the debtor at a time when the debtor was insolvent as defined by the Bankruptcy Code;

3. Within ten days after the goods were delivered to the debtor, the seller made a written demand for the return of the goods; and

4. That the debtor had possession of the goods at the time of the reclamation demand or the goods were not in the hands of a buyer in the ordinary course or a good faith purchaser at the time of demand.

*In re Video King,* 100 B.R. at 1013–14; *In re Pester Refining Co.,* 964 F.2d 842, 845 (8th Cir.1992); *Conoco, Inc., v. Braniff, Inc.,* 113 B.R. 745, 751 (Bankr.M.D.Fla.1990).[1] The parties here have stipulated that Reinhart has met the first three requirements above, and thus only possession of the goods remains in dispute.

Reinhart admits that it is "unable to establish ... exactly how much of its product Adventist had on hand," but claims that this inability is a result of Adventist's misrepresentation regarding the performance of an inventory. Reinhart therefore argues that Adventist is estopped from now arguing that Reinhart must prove the exact amount of product in Adventist's possession.

■ "[E]stoppel occurs when one party knowingly misrepresents or conceals a material fact and the other party, not knowing the truth, reasonably relies on that misrepresentation ... to his detriment." *Loyola University of Chicago v. Humana Insurance Co.,* 996 F.2d 895, 902 (7th Cir.1993). Further, the misled party must establish that it would not have acted as it did "but for the representations of the other party," and that it had "no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise." *Id.* (internal citations omitted).

1. The right to reclamation arises under § 2–702 of the U.C.C. That right is both protected and limited by 11 U.S.C. § 546, which mandates the first three numbered requirements in the text. We join the Eleventh Circuit and "numerous bankruptcy and district court[s]" in holding that "a seller can reclaim only those goods the debtor possessed when it received the reclamation demand, [and] ... the seller bears the burden of proving possession." *In re Rawson Food Service, Inc.,* 846 F.2d 1343, 1348 (11th Cir.1988).

Thus, in order to evaluate Reinhart's claim we must address two questions. The first is whether Adventist's attorney, Levit, made the representations alleged by Reinhart. Second, we must decide whether Reinhart was reasonable in relying on those representations. These issues involve questions of fact, and are therefore reviewed under a clearly erroneous standard. *In re Kenneth Leventhal and Co.*, 19 F.3d 1174, 1177 (7th Cir.1994). Conclusions of law, in contrast, are subject to *de novo* review. *In re Longardner and Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989).

## A. Promised Inventory

Kerkman contends that Levit promised that Adventist had taken or would soon take an inventory of the supplies in its possession. He presented his handwritten notes from the conversation, the letter that he sent confirming the conversation (admittedly never received by Adventist) and an affidavit in support of this claim. In response, Levit simply claims that he does not remember making this promise. However, Levit does not deny that he did so. The district court, given these facts, reversed the bankruptcy court and concluded that Kerkman's claim was believable and that Levit had promised an inventory. We agree with the district court that the bankruptcy court's decision was clearly erroneous, and we affirm the district court's decision.

## B. Reasonable Reliance

The district court also concluded that Kerkman's initial reliance on Levit's statement was reasonable, and we too find that conclusion to be supportable. As the district court stated, "it is perfectly reasonable to assume that an attorney who says he will do something will do it." Mem.Op. at 7. However, Kerkman's long continued reliance on that statement gives us pause.

The seller in a reclamation case bears the burden of proving that the debtor possessed the goods when it received the reclamation demand. *In re Rawson Food Service*, 846 F.2d at 1348. This is a fairly stringent requirement because a seller's evidence "must indicate that this critical fact on which its recovery depends is true, and not merely that it is possible it is so." *Id.* (citing *In re Flagstaff Foodservice Corp.*, 56 B.R. 899, 908 (Bankr.S.D.N.Y.1986)); *See also In re Pester*, 964 F.2d at 846 (the "mainstream of UCC cases hold[ ] that the seller may only reclaim goods in the buyer's possession"); *In re Penthouse Travelers of Aripeka, Inc.*, 120 B.R. 226, 228 (Bankr. M.D.Fla.1990) (administrative priority not allowed because seller failed to establish that the goods were still in the debtor's possession at the time the demand was made); *Conoco*, 113 B.R. at 751. Further, no presumption of continued possession may arise simply from proof that the goods were delivered to the debtor. *In re Rawson Food Service*, 846 F.2d at 1350. Reinhart's attorney, Kerkman, was an experienced bankruptcy attorney and knew or should have known that he bore this heavy burden of proving possession. Yet he relied on Levit's promise of an inventory for a year without doing anything to ensure that he would have sufficient evidence to prove his claim.

Reinhart argues that it assumed that the inventory Adventist filed with its Schedule of Assets and Liabilities, which was dated November 14, 1990, but filed with the Schedule in January, was sufficient evidence to establish an administrative priority claim. However, even if this inventory had been taken on November 14th,[2] it is not sufficient proof for an administrative priority claim. First, Reinhart must prove what food was in Adventist's possession as of November 15th,

---

2. The inventory was actually apparently based on a "fiscal inventory taken as of December 31, 1990," not on November 14th, as the date on the inventory itself implies. Appellee Br. at 11, n. 4.

However, given that the document itself was dated November 14th, it was not unreasonable for Reinhart to have assumed that it reflected Adventist's inventory as of that date.

the date of the reclamation demand, not November 14th. Second, even if we assume that, with adequate information, a reliable adjustment for one day's food use could readily be made, the inventory in question was not even detailed enough to prove which, if any, of *Reinhart's* goods were in Adventist's possession on November 14th. The inventory simply stated the value of all the food remaining at each of Adventist's locations; it did not break this value down by supplier and thus did not establish what part of this total belonged to Reinhart.

Reinhart argues that it can prove how much of the total food in Adventist's possession on November 15th was attributable to Reinhart's food deliveries from the previous 10 days. It claims that it is possible to do so using delivery invoices, menus detailing the meals served at the facility and the contract between Reinhart and Adventist specifying that Reinhart would provide 80–85% of Adventist's food. However, we do not find this evidence sufficient. We do not know that each shipment from Reinhart to Adventist constituted 85% of the food supply at that moment; the contract establishes only that Reinhart is to supply 85% of Adventist's food overall. Further, we do not know that it was Reinhart's food that was served in the days directly following the bankruptcy, much less if the food served was the food delivered by Reinhart in the 10 days prior to the reclamation demand. As Reinhart itself points out, Adventist had 21 different locations, all presumably with deposits of Reinhart food. There is no way to establish accurately, even using the inventory, what food belonging to Reinhart remained in Adventist's possession. Reinhart should have realized by the time the Adventist inventory was filed, at the latest, that no sufficiently detailed inventory had been taken.

We recognize that, even if Reinhart had realized in January of 1991 that no inventory had been taken, it might still have been too late to get an accurate count of the goods that were in Adventist's possession at the time of the reclamation demand. Adventist argues that had Reinhart acted at that time, memories would at least have been fresher and the possible proof would only be two

months old instead of a year old as it was by the time Reinhart finally took any action. We accept that had Reinhart acted in January to try to reconstruct the inventory, it would perhaps have had a better claim of estoppel. Yet it is also possible that action in January would have been too late for sufficient reconstruction of the inventory.

It is really impossible to say as a general matter how long reliance would be reasonable based on a promise such as the one received from Levit. But, under the circumstances here, we can agree with the district court that the outer limit of reasonable reliance was January 24, 1991, when the Schedule and inventory were filed. Kerkman should have been aware from the first of his responsibility to prove possession. He should also have known of the importance of detailed evidence in making that proof and the need to collect the evidence promptly because the product in question consisted of presumably perishable foodstuffs. *See, e.g., Tate Cheese Co. v. Crofton and Sons, Inc.,* 139 B.R. 567, 569 (Bankr.M.D.Fla.1992) ("diligent assertion of any reclamation right" particularly important in case involving perishable foodstuff). Yet Kerkman failed to take effective action to ensure that Adventist was taking the inventory. Instead, he simply assumed, based on a promise, that the inventory was being taken to his satisfaction. Thus, while we do not blame him for initially relying on the promises of Levit, we agree with the district court that to continue to do so for months on end without even verifying that an inventory had in fact been taken or that it would include the necessary information was not reasonable. Extended reliance was particularly unwise when he himself bore a heavy burden of proof on this issue.

We certainly do not mean to suggest that Reinhart should have immediately repossessed food from the mouths of Adventist's elderly residents. Nor do we suggest that the food had to be actually reclaimed at all. However, these were not the only options available to Reinhart. Reinhart could have contacted Adventist promptly after the time for the requested inventory to ensure that the inventory was being taken, it could have, and probably should have, asked for a copy

of the inventory. When no evidence of an inventory was produced, it could and should have investigated further. If these and other follow-up actions had revealed that there was and would be no timely inventory, Reinhart could then have arranged to take its own inventory. All of these possibilities represent reasonable and appropriate actions which would not conflict with Reinhart's commendable desire to cause as little disturbance to Adventist's patients as possible. Yet they would have also ensured that Reinhart had the proof it needed.

Thus, while we are sympathetic with Reinhart's claim that it was entitled to rely on Levit's word, our sympathy does not extend to Reinhart's use of this promise as justification for a year's inaction and the vain hope then of meeting the high standards of proof for an administrative priority. Hence, we conclude that, while Reinhart initially had a claim based on its detrimental reliance on Levit's promise, it slept on its rights long enough to lose a reasonable hope of adducing proof sufficient to support an administrative priority.