**In re GEORGETOWN STEEL COMPANY, LLC, Debtor.**

No. 03–13156–W.

United States Bankruptcy Court,
D. South Carolina.

July 2, 2004.

Michael M. Beal, Columbia, SC, for Debtor.

Joseph F. Buzhardt, III, Columbia, SC, for trustee.

## ORDER REGARDING THE REC-LAMATION CLAIM OF BSI COMMODITIES, INC.

JOHN E. WAITES, Bankruptcy Judge.

The matter before the Court is the Debtor's Reclamation Report filed on November 21, 2003 (the "Report") and the Limited Objection to the Report ("Objection") filed by BSI Commodities, Inc. ("BSI"); and testimony having been given at the hearing by the Director of Purchasing for the Debtor (the "Director of Purchasing"); and it appearing that the relief requested is in the best interest of the Debtor, its estate, creditors, and other parties in interest, the Court makes the following findings of fact and conclusions of law [1]:

### FINDINGS OF FACT

1. On October 21, 2003, (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the District of South Carolina (the "Court").

The Debtor is operating its business and managing its properties as debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.[2] The Debtor operated a steel mill and ceased active operations on the Petition Date.

2. A statutory committee was appointed on October 30, 2003 (the "Committee").

3. Pursuant to a motion filed by the Debtor on the Petition Date, the Court entered its Order on October 24, 2004 under 11 U.S.C. §§ 105(a), 503(b), 546(c) and 546(g)(A) Establishing Procedure for the Treatment of Valid Reclamation Claims and (B) Prohibiting Third Parties from Interfering with Delivery of the Debtor's Goods (the "Reclamation Order"). Pursuant to the Reclamation Order, the Debtor was required to file a report listing the reclamation claims that the Debtor believed to be valid.

4. BSI sent notice of the reclamation claim to the Debtor by letter dated October 28, 2003 (the "Demand Date"). In its demand for reclamation, BSI sought the return of $15,782.03 of silocomanganese ("SMI") shipped to the Debtor on October 13, 2003.

5. The Debtor filed its Report Identifying What the Debtor Believes to be Valid Reclamation Claims on November 21, 2004 (the "Reclamation Report"). The Reclamation Report sets forth the amount of goods in possession of the Debtor as of the date of the reclamation demand by 9 different vendors (together, the "Reclamation Claims," individually, a "Reclamation Claim"), identified in the Reclamation Report on *Exhibit A* as the "Preliminary

---

1. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2. Further reference to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) will be by section number only.

Valid Amount." In the Reclamation Report, the Debtor listed the Preliminary Valid Amount of the BSI Reclamation Claim as $5,243.20.

6. BSI filed its Objection to the Reclamation Report on December 15, 2003, stating that BSI had a valid reclamation claim against the Debtor in the amount of $15,782.03.

7. The Debtor has stated for the record it has no objection to the timing of BSI's demand for reclamation and does not dispute shipment of the SMI on the date in question.

8. The dispute between the Debtor and BSI relates solely to the amount of SMI in possession of the Debtor on the date that BSI made its demand for reclamation, on October 28, 2003.

9. Testimony was presented by the Director of Purchasing that SMI is shipped in two methods, in bulk or in supersacks. The supersacks weigh approximately 4000 pounds each. The shipment at issue consisted of approximately 12 supersacks of SMI shipped on October 13, 2003.

10. BSI claims that the Debtor was in possession of more than 4 supersacks on the Demand Date, in contrast to the Reclamation Report, which acknowledges a claim arising from the possession of 4 supersacks by the Debtor on the Demand Date. To support its position, BSI points to the Motion for an Order Approving Procedures to Sell Certain Assets Without Further Court Approval (the "Sale Motion") filed by the Debtor on December 8, 2003, in which the Debtor proposed to sell 144,080 pounds of SMI, or 36 supersacks. The Debtor also noticed out the sale of 144,080 pounds of SMI pursuant to the procedures set forth in the Sale Motion.

11. The Director of Purchasing testified that an inventory was taken on October 21, 2003, after production at the Mill had ceased (the "Closing Inventory"). The Closing Inventory reflects that on October 21, 2003, the Debtor had on hand 16,000 pounds or 4 supersacks. The Debtor ceased production on October 21, 2003, and no further SMI was consumed in the manufacturing process after that date.

12. Testimony was also presented by the Director of Purchasing that SMI was sold to another company, D.J. Joseph, in January of 2004, that all of the SMI in the Debtor's possession on October 21, 2003 was sold to D.J. Joseph, and the Debtor did not sell any supersacks of SMI to anyone other than D.J. Joseph.

13. The Debtor produced weigh tickets from the stevedoring company that removed the SMI from the Debtor's facility for D.J. Joseph. The weigh tickets indicated that the stevedoring company removed 4 supersacks from the Debtor's premises, weighing 15,960 pounds. The SMI was sold to D.J. Joseph by weight, and the Director of Purchasing testified he only sold and received funds for the 4 supersacks as weighed by the stevedoring company.

14. The Director of Purchasing testified it would not have been unusual for the company to consume 8 supersacks or more of SMI during the period from the shipment date of October 13, 2003 to October 21, 2003, as the average consumption was 2 supersacks of SMI a day. He did not recall ever having 36 supersacks on hand in the inventory, as the product was available locally so large quantities of inventory were not stockpiled.

15. Finally, the Director of Purchasing testified that he was responsible for the inventory list created for the Sale Motion, that it reflected the same inventory level for bulk SMI as shown on the Closing Inventory, that he prepared the Sale Motion inventory list based on the Closing

Inventory, and it was his best estimate that in the process of calculating pounds, bag weight, and the number of bags, that he made a mathematical mistake and wrote down the wrong number for the Sale Motion inventory list. He further stated that he was familiar with the BSI reclamation claim and that to the best of his knowledge, the Debtor only had 4 supersacks on hand on October 21, 2003 and no supersacks were sold or consumed through production after that date except for the sale of 4 supersacks to D.J. Joseph.

16. BSI presented no witnesses at the hearing, relying on the Sale Motion and the related notice of sale for its evidence.

## CONCLUSIONS OF LAW

■ Reclamation is a state law statutory remedy arising out of the Uniform Commercial Code (the "UCC"), found at 36-2-702, South Carolina Code of Laws (Revised 2003)[3]. Under the UCC, the seller has certain rights to reclaim goods sold to an insolvent buyer if demand is made within 10 days after receipt of goods. Section 2–702(2) provides as follows:

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

2–702(2). Once the state law right of reclamation has been established, section 546(c) of the Bankruptcy Code provides the "sole

remedy for a seller seeking to reclaim goods from a debtor in bankruptcy." *In re Pluma, Inc.,* No. 99011104c–11G, 2000 WL 33673751, at *3 (Bankr.M.D.N.C. 2000).

■ In order to establish a claim for reclamation, the reclaiming seller must prove the following elements:

1. That the seller sold goods on credit to the debtor in the ordinary course of business of both;

2. That the seller delivered the goods to the debtor at a time when the debtor was insolvent as defined by the Bankruptcy Code;

3. Within ten days after the goods were delivered to the debtor, the seller made a written demand for the return of the goods; and

4. That the debtor had possession of the goods at the time of the reclamation demand or the goods were not in the hands of a buyer in the ordinary course or a good faith purchaser at the time of the demand.

*Id.* (citing *In re Adventist Living Centers, Inc.,* 52 F.3d 159, 162 (7th Cir.1995)). *See also In re Video King,* 100 B.R. 1008, 1013–1014 (Bankr.N.D.Ill.1989). Section 546(c) adds the additional requirement that the demand be in writing and expands the time for making demand if the initial 10 day period expires after the commencement of a bankruptcy case. However, these additional requirements are not at issue in this case.

■ The burden of proof is with the seller in reclamation matters. The reclaiming seller must "establish each element of the right to reclaim goods by a 'fair preponderance of the evidence.'" *In*

---

**3.** All further references to the South Carolina Uniform Commercial Code shall be by UCC section number only.

*re Adventist Living Centers, Inc.* 52 F.3d 159, 162 (7th Cir.1995) (citations omitted). "The seller in a reclamation case bears the burden of proving that the debtor possessed the goods when it received the reclamation demand. [citations omitted] This is a fairly stringent requirement because a seller's evidence 'must indicate that this critical fact on which its recovery depends is true, and not merely that it is possible it is so.' " *Id.* at 163 (citing *In re Rawson Food Service, Inc.,* 846 F.2d 1343, 1348 (11th Cir.1988)). In addition, no presumption that the Debtor is in possession of the goods in question on the date of the reclamation demand arises from proof that the goods were delivered to the debtor. *In re Adventist Living Centers, Inc.,* 52 F.3d at 163; *In re Rawson Food Service,* 846 F.2d at 1350.

 In this case, the Debtor has conceded all the elements of a reclamation claim except the fourth requirement of possession. The only issue between the parties is the amount of SMI in possession of the Debtor on the date BSI made its reclamation demand. As noted above, the case law is clear and persuasive that the burden of proof by a preponderance of the evidence is on the reclaiming seller.

BSI has failed to set forth persuasive evidence establishing its claim that the Debtor possessed more than 4 supersacks of SMI on the critical date of October 28, 2003—the date of the reclamation demand. BSI presented no witnesses on its behalf and relied solely on the inventory listing in the Sale Motion. The best evidence of what the Debtor possessed on the date of the reclamation demand is the Closing Inventory supporting a finding that the Debtor was only in possession of 4 super-

sacks of SMI on October 21, 2003. There was no evidence of any change in its inventory level between October 21, 2003 and October 28, 2003.[4]

THEREFORE, based on the reasons set forth hereinabove, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1. The Objection of BSI to the Reclamation Report is hereby overruled; and

2. BSI has a reclamation claim against the Debtor in the amount of $5,243.20 and such claim is subject only to the determination of its priority claim status and other issues raised in the Debtor's Motion for an Order Classifying Reclamation Claims as General Unsecured Claims or in the Alternative Valuing Claims filed on June 7, 2004.

**AND IT IS SO ORDERED.**

---

4. BSI raised at the hearing the issue of equitable estoppel, arguing that it relied on the inventory attached to the Sale Motion and was injured based on that reliance. The Court is not convinced that the essential elements giving rise to equitable estoppel are present in this case.